UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAMIEN CARRION,

|  |  |
|---|---|
| *Plaintiff*, | |
| -against- | 9:23-CV-1306 |
| SERGEANT LEE M. MACKAY. et al., | ECC/MJK |
| *Defendants*. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT PURSUANT TO FED. R. CIV. P. 56**


LETITIA JAMES
New York State Attorney General
Attorney for Defendant
The Capitol
Albany, New York  12224

Rachael Ouimet
Assistant Attorney General, of Counsel
Bar Roll No. 703304
Telephone:  (518) 776-2599
Fax:  (518) 915-7732 (Not for service of papers)

Date: May 22, 2026

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 1

STANDARD OF REVIEW ............................................................................................ 4

ARGUMENT ................................................................................................................ 5

POINT I ............................................................................................................. 5

DEFENDANT MACKAY WAS NOT PERSONALLY INVOLVED IN THE
ALLEGED CONSTITUTIONAL VIOLATION ................................................. 5

POINT II ............................................................................................................ 7

PLAINTIFF'S EIGHTH AMENDMENT DELIBERATE
INDIFFERENCE/FAILURE TO PROTECT CLAIM AGAINST
DEFENDANT FAILS AS A MATTER OF LAW ................................................ 7

POINT III ......................................................................................................... 14

DEFENDANT MACKAY IS ENTITLED TO QUALIFIED IMMUNITY ................... 14

CONCLUSION ........................................................................................................... 16

Defendant Lee M. MacKay (MacKay) submits this memorandum of law in support of his motion for summary judgement pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

At all times relevant, Plaintiff, Damien Carrion, was an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision (DOCCS). *See generally* Complaint, Dkt. No. 1 (Compl.). Plaintiff alleges Defendant MacKay violated his Eighth Amendment rights for failing to protect him from a substantial risk of harm. *See generally* Compl. Plaintiff's claim lacks merit.

Defendant MacKay submits this memorandum of law in support of his motion for summary judgement seeking dismissal of Plaintiff's Complaint in its entirety. First, Defendant MacKay was not personally involved in the alleged constitutional violation. Second, Plaintiff's Eighth Amendment deliberate indifference/failure to protect claim against Defendant MacKay fails as a matter of law. Finally, Defendant MacKay is entitled to qualified immunity.

## STATEMENT OF FACTS

At all relevant, Plaintiff was housed at Cape Vincent Correctional Facility (Cape Vincent). *See generally* Compl. Cape Vincent has 14 housing areas in an open dorm format as well as a Special Housing Unit (SHU) comprised of 32 cells. *See* Declaration of Lee MacKay (MacKay Decl.) ¶ 4.

### The first two fights on October 28, 2020

On October 28, 2020, there were two separate incidents involving fights between incarcerated individuals. *See* MacKay Decl. ¶ 13. The first fight occurred at approximately 5:31 p.m., on the northside walkway in front of A-1 dorm and involved seven incarcerated individuals. *See* MacKay Decl. ¶ 14, Exh. C. The second fight occurred in the D-1 dorm and involved two

incarcerated individuals. *See id.* It was later determined that these incidents were a result of a dispute over drugs between two rival gangs (Bloods and Latin Kings). *See id.*

As a result of these incidents, Defendant MacKay, who was on his regular day off, was called into the facility that evening to assist staff. *See* MacKay Decl. ¶ 13. All nine of the incarcerated individuals involved were placed in the SHU pending disciplinary hearings. *See* MacKay Decl. ¶ 15. By 8:40 p.m. on October 28, 2020, all the SHU cells were filled and four of the nine incarcerated individuals still needed to be placed into SHU. *See* MacKay Decl. ¶ 15, Exh. D. To accommodate the remaining four incarcerated individuals, Acting Commissioner O'Gorman approved the transfer of nine other incarcerated individuals, who were already housed in Cape Vincent's SHU to Gouverneur Correctional Facility. *See* MacKay Decl. ¶ 15, Exh. E. Starting at 10:10 p.m. on October 28, 2020, Cape Vincent staff began the process of transferring incarcerated individuals out of Cape Vincent's SHU and continued one individual at a time until 11:58 p.m. that same night. *See id.* Plaintiff was not involved in either the incident on the northside walkway or in D-1 Dorm. *See* MacKay Decl. ¶ 16, Exh. C.

**October 28, 2020 incident involving Plaintiff in the G-1 Dorm**

On October 28, 2020, at approximately 9:45 p.m., Plaintiff was involved in a fight with two other incarcerated individuals in G-1 Dorm. *See* MacKay Decl. ¶ 17, Exh. F. Defendant MacKay was not present for the fight, but responded to the dorm after a non-party officer used his Personal Alarm System (PAS) to initiate a red dot response.[1] *See* MacKay Decl. ¶ 18, Exh. F. After

---

[1] A PAS is a one-way radio used by dorm officers at Cape Vincent that is connected to the officer assigned to the arsenal. *See* MacKay Decl. ¶ 14 fn. 1. Once the dorm officer activates his PAS, the arsenal officer sends out a message over the two-way radios asking for a red dot, or emergency, response team to respond to a designated area. *See id.* A response team is a group of officers, all of whom are without a fixed post, that are only assigned to respond to emergencies at the facility. *See id.*

2

the fight, Defendant MacKay, as the responding sergeant, began an investigation into the incident as was common practice at Cape Vincent. *See* MacKay Decl. ¶ 20. As part of his investigation, he interviewed all the incarcerated individuals, including Plaintiff, to determine if they needed to be moved out of G-1 Dorm and/or enter into protective custody. *See* MacKay Decl. ¶ 21, Exh. F. The interview included asking each incarcerated individual if they wanted protective custody. *See id.* Plaintiff declined Defendant MacKay's offer of protective custody and signed a Protective Custody Waiver. *See* MacKay Decl. ¶¶ 21-21, Exh. G.

As a result of the fight on G-1 dorm, Plaintiff was issued a misbehavior report (MBR), endorsed by Defendant MacKay, charging him, amongst other things, with fighting, creating a disturbance, and failing to follow a direct order. *See* MacKay Decl. ¶ 26, Exh. A. The MBR also indicated that Plaintiff was to be placed under confinement/restriction and that non-party Lt. Petrie authorized Plaintiff's move to E-2 Dorm, cube 18. *See id.* Lt. Petrie authorized Plaintiff's move to E-2 Dorm because the SHU was full. *See* MacKay Decl. ¶ 19; *see also* Declaration of Christopher Petrie (Petrie Decl.) ¶¶ 15, 22, Exh. C. In making this determination, Lt. Petrie considered whether Plaintiff had any known enemies in E-2 Dorm. *See* MacKay Decl. ¶ 27, Exh. D; Petrie Decl. ¶ 16. Defendant MacKay, as a DOCCS Sergeant, did not have the authority to change Plaintiff's housing unit and did not know what information Lt. Petrie considered when determining what housing unit to place Plaintiff. *See* MacKay Decl. ¶¶ 24, 27, Petrie Decl. ¶ 27.

On October 28, 2020, at approximately 11:35 p.m., Defendant MacKay escorted Plaintiff to the E-2 Dorm, cube 18, and placed him on keeplock restriction. *See* MacKay Decl. ¶ 28, Exh. H. While on keeplock restriction, Plaintiff was not allowed to leave his cube or communicate with other incarcerated individuals unless he needed to use the bathroom *See id.*

3

**October 29, 2020 incident in the E-2 Dorm**

On October 29, 2020, at approximately 11:00 p.m. in the E-2 Dorm, Plaintiff and three other incarcerated individuals were involved in an altercation. *See* MacKay Decl. ¶ 30, Exh. I. Again, Defendant MacKay, who was working overtime, responded to E-2 Dorm after the dorm officer used his PAS to call a red dot response. *See* MacKay Decl. ¶ 31, Exh. I. Defendant MacKay, as part of his job responsibilities, conducted another investigation. *See* MacKay Decl. ¶ 32, Exh. H. During this investigation, Plaintiff told Defendant MacKay that approximately one minute prior to the fight, an unknown incarcerated individual threw a cup of boiling water on him. *See* MacKay Decl. ¶ 32, Exh. I. Due to the nature of his injuries, non-party Lt. Harrienger authorized Plaintiff's transfer to the hospital. *See* MacKay Decl. ¶ 33. On October 30, 2020, Plaintiff was transferred out of Cape Vincent to Upstate Correctional Facility's SHU 200. *See* MacKay Decl. ¶ 35, Exh. J.

## STANDARD OF REVIEW

Summary judgment should be granted absent any "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). Disputes are "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party," and facts are sufficiently "material" only if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, factual disputes that are "irrelevant or unnecessary" will not preclude summary judgment. *Id*.

The initial burden rests with the movant, who must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury

4

to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d. Cir. 2001) (citations omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d. Cir. 1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

## ARGUMENT

## POINT I

## DEFENDANT MACKAY WAS NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATION

A defendant may only be held accountable for their own actions under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

To prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangretti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id.*

Here, Plaintiff fails to demonstrate that Defendant MacKay personally displayed the requisite state of mind for an Eighth Amendment violation—i.e., that he knew of and disregarded

an excessive risk to Plaintiff's safety. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Defendant MacKay did not have the authority to authorize or direct where Plaintiff was housed at Cape Vincent. *See* MacKay Decl.¶ 40; Petrie Decl. ¶25. Housing assignments and transfers of incarcerated individuals were determined by a higher-ranking officer than Defendant MacKay. *See* MacKay Decl. ¶ 40; Petrie Decl. ¶ 25. Even assuming Defendant MacKay felt protective custody status was warranted based on his interview with Plaintiff, Defendant MacKay could only make a recommendation to the watch commander which would be considered when the watch commander determined whether to place Plaintiff in protective custody. *See* MacKay Decl. ¶ 29; Petrie Decl. ¶ 27.

Further, even crediting Plaintiff's allegations that he indicated to Defendant MacKay that he wanted an involuntary protective custody designation, *see* Pl. Depo. 44:17-23, the final decision to authorize protective custody status (either voluntary or involuntary[2]) would still lie with the watch commander, not Defendant MacKay. *See* MacKay Decl. ¶ 29; Petrie Decl. ¶ 27. As such, Defendant MacKay was not personally involved in the alleged failure to protect because he did not have the authority to remedy or take action with respect to the alleged constitutional violation. *See Kregler v. City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) ("Because it is undisputed that Schwan and Keenaghan were subordinates and thus lacked authority to prevent the alleged constitutional violation caused by their supervisor, Kregler's claim of deliberate indifference fails as a matter of law."); *Hendrix v. Annucci*, No. 20-CV-0743 (GTS/TWD), 2024 WL 1285394, at *21 (N.D.N.Y. Mar. 26, 2024) (dismissing Eighth Amendment claims against the

---

[2] Pursuant to DOCCS Directive #4948, involuntary protective custody status is granted to an incarcerated individual who may be a potential victim or witness likely to be intimidated, or who lacks the ability to live in the general facility community and who may, for good cause, be restricted from communication with the general incarcerated population, and who does not voluntarily accept admission into protective custody. *See* Petrie Decl. ¶ 20.

defendants because the defendants lacked the authority to prevent the alleged constitutional violation); *see also Kuolkina v. City of New York*, 559 F. Supp. 2d 300, 317 (S.D.N.Y. 2008) (dismissing claims against state officials who "did not have the authority to take action with respect to any constitutional violation plaintiffs may have suffered."); *Smart v. Goord*, 441 F. Supp. 2d 631, 644 (S.D.N.Y. 2006) (determining that the defendant was not personally involved in the plaintiff's alleged constitutional violation where the plaintiff's involuntary protective custody status was determined through the superintendent's hearing process, and the defendant had no authority to order the plaintiff's release or continued confinement).

For these reasons, Plaintiff's Eighth Amendment failure to protect claim against Defendant MacKay should be dismissed for lack of personal involvement.

## POINT II

### PLAINTIFF'S EIGHTH AMENDMENT DELIBERATE INDIFFERENCE/FAILURE TO PROTECT CLAIM AGAINST DEFENDANT FAILS AS A MATTER OF LAW

Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994). In order to establish a "failure to protect," the plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to that risk and the incarcerated individual's safety. *See id*.

Even assuming Defendant MacKay was personally involved, Plaintiff still cannot establish that Defendant MacKay was deliberately indifferent. *Shell v. Brun*, 585 F. Supp. 2d 465, 470

(W.D.N.Y. 2008) ("[T]here can be no liability absent a particularized threat to the inmate's safety, which was lacking here.").

### A. Plaintiff cannot establish that he was incarcerated under conditions posing a risk of serious harm

"As to the first prong, the deprivation must be sufficiently serious and contemplate[ ] a condition of urgency, one that may produce death, degeneration, or extreme pain." *Campbell v. Prue*, No. 16-CV-0004, 2018 WL 4635708, at *5 (N.D.N.Y. July 3, 2018), *rep. rec. adopted by*, 2018 WL 3574871 (N.D.N.Y. July 25, 2018) (internal quotation marks and citations omitted). In that vein, "[a] substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or request by plaintiff to be separated from the attacker." *Gilmore v. Rivera*, No. 13 Civ. 6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014).

Here, Plaintiff fails to adequately allege the first prong of the Eighth Amendment analysis. Plaintiff testified he specifically requested to be transferred to E Dorm after his fight on October 28, 2020, *see* Pl. Depo. 55:6-8, and Lt. Petrie authorized that transfer after confirming Plaintiff had no known enemies in E Dorm, *see* Petrie Decl. ¶ 15, Exh. F, and ensuring that the individuals that plaintiff got into a fight with were separated, *see* Petrie Decl. ¶ 16. Accordingly, there is "insufficient evidence to create a genuine dispute that the objective prong is satisfied." *See Gssime v. Cadian*, No. 06-CV-1449, 2009 WL 1161040, at *4 (N.D.N.Y. Apr. 28, 2009) (Plaintiff failed to establish the objective prong where he failed to produce credible evidence of any specific instances of attacks or threats to his safety); *see also Midalgo v. Bass*, No. 03-CV-1128, 2006 WL 2795332, at *10 (N.D.N.Y. Sept. 26, 2006) (Prison officials took appropriate measures to protect Plaintiff where (1) his safety concerns were investigated and found to be without merit as there were no known enemies in the facility; and (2) Plaintiff and his cellmate were separated and placed

8

in different cells); *James v. Orange Cnty. Corr. Facility*, No. 09-CV-7226, 2011 WL 5834855, at *6 (S.D.N.Y. Nov. 18, 2011) (suggesting that had the incarcerated individuals been on a no-contact list with one another, it "would have indicated that allowing the [incarcerated individuals] in the same area together was dangerous.").

### B. Defendant MacKay was not deliberately indifferent to Plaintiff's safety

As to the second prong, deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance*, 143 F.3d 702. "Mere negligence (for example if a prison guard should know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment. It is also not sufficient to show that the prison guard merely failed to act reasonably." *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 362 (W.D.N.Y. 2013) (citation omitted). "To satisfy this standard in the context of an altercation, an inmate must show that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

Generally, to succeed on a failure to protect claim, the plaintiff must demonstrate a "particularized threat" to the individual's safety. *Ramlogan v. White*, No. 20 Civ. 5879, 2024 WL 1313417, at *6 (S.D.N.Y. Mar. 27, 2024) (citation omitted). However, "some courts have intimated that pervasive violence at a facility may satisfy the subjective prong." *Id.* (citing *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013)). "[T]he Second Circuit has stated that were 'a substantial risk of inmate attacks was longstanding, pervasive, well-

9

documented, or expressly noted by prison official," that pattern can demonstrate an official's "actual knowledge of the risk." *Id.* (quoting *Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020)). "[T]he pattern must be substantively similar to the assault at issue, such that remedial measures would have prevent the assault." *Id.* Further, the plaintiff must "allege that the defendant knew of a history of prior inmate-on-inmate attacks to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Parris*, 947 F. Supp. 2d at 363.

### 1. Plaintiff failed to demonstrate a "particularized threat" to his individual safety

Plaintiff's Eighth Amendment claims must fail because he did not report to Defendant MacKay a specific credible threat demonstrating that he faced an imminent risk of serious harm. *See Pena v. New York*, No. 20-CV-0481, 2020 WL 3453554, at *3 (N.D.N.Y. June 4, 2020) ("On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals" are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm.") (quoting *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016)). Insofar as Plaintiff alleges that he expressed to Defendant MacKay that he feared for his safety because Bloods members were housed in his dorm and Plaintiff identified as a member of the Latin Kings, *see* Compl. ¶ 13, Plaintiff testified that during his interview with Defendant MacKay on October 28, 2020, he did not identify any specific incarcerated individual who threatened him prior to the incident, report any direct threat made against him, or otherwise communicate facts demonstrating that a specific assault against him was imminent. *See* Pl. Depo. 28:24-29:7; 51:10-24; 54:17-18 ("I'm telling [MacKay] like, yo, please. Like I fear for my safety. Those guys are going to hurt me."). Indeed, when asked to name the Bloods member that Plaintiff was involved in the altercation with on

10

October 28, 2020, Plaintiff could not identify him. *See* Pl. Depo. 37:21-23. Furthermore, when asked what Plaintiff specifically stated to Defendant MacKay, Plaintiff testified, "I'm saying there's a war going on between the Bloods and the Latin Kings over drugs and money." Pl. Depo. 60:4-8. Plaintiff's own testimony establishes nothing more than a generalized fear of prison violence and gang tension which is not enough to establish deliberate indifference. *See Vincent*, 117 F. Supp. 3d at 337 (dismissing failure to protect claim where Plaintiff failed to show that Defendants had actual and constructive knowledge that Plaintiff, in particular, faced harm in the prison yard) (emphasis added); *see also Edney v. Kerrigan*, No. 00-CV-2240, 2004 WL 210907, at \*6 (S.D.N.Y. Sept. 21, 2004) (quoting *Melo v. Combes*, No. 97-CV-0204, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998) for proposition that failure to protect requires showing that "defendants had knowledge of the danger to the plaintiff himself as opposed to issues of prison safety in the most general sense").

**2. Defendant MacKay did not knowingly disregard a risk to Plaintiff's health and safety**

Even assuming, *arguendo*, that Defendant MacKay had knowledge of a risk of harm to Plaintiff, Plaintiff own testimony demonstrates that Defendant MacKay attempted to take reasonable measures to abate Plaintiff's concerns. *See Reyolds v. Stone*, No. 20-CV-0686, 2022 WL 3088425, at \*11 (N.D.N.Y. June 21, 2022), *rep. rec. adopted sub nom. Reynolds v. Stone*, 2022 WL 3082465 (N.D.N.Y. Aug. 3, 2022) (internal quotations and citation omitted). There is no evidence that Defendant MacKay knowingly placed Plaintiff into a dorm containing known enemies or individuals who posed a specific threat to Plaintiff's safety. *See* MacKay Decl. ¶ 29.

During his investigation into the October 28, 2020 incident, Defendant MacKay asked Plaintiff if he wanted protective custody status and Plaintiff declined. *See* MacKay Decl. ¶¶ 21, 22, Exhs. F, B; Pl. Depo. 54:24-25. Plaintiff declined the very protective option that Defendant

MacKay offered in response to Plaintiff's expressed concerns. Courts have routinely dismissed Eighth Amendment claims where the defendant offered the plaintiff protective custody and the plaintiff nevertheless declined. *See Staton v. Farrell*, No. 1:20-CV-01120, 2023 WL 10354380, at *6 (W.D.N.Y. Sept. 29, 2023) (Defendants were not deliberately indifferent to Plaintiff's safety concerns where Plaintiff testified that in response to his concerns for his safety after being assaulted by other incarcerated individuals, Defendant offered him protective custody and Plaintiff declined); s*ee also Wood v. Skinner*, No. 98-CV-0146, 2000 WL 1209378, at *2 (W.D.N.Y. Aug. 25, 2000) ("Moreover, the fact that plaintiff had previously refused to enter 'protective custody' undermines any inference that defendants have been—and continue to be—indifferent to plaintiff's health and safety . . . If anything, such refusal is indicative of plaintiff's own indifference to his own health and safety."); *Simmons v. Artuz*, No. 94 Civ. 6777, 1996 WL 233504, at *4 ("It is undisputed that plaintiff was interviewed by a Sergeant after the first attack and that the plaintiff refused protective custody status. Thus, plaintiff has failed to show that defendants has failed to show that defendants had the requisite knowledge and culpable state of mind prior to these two attacks to establish a violation under Section 1983.").

Further, as indicated above, after refusing protective custody, Plaintiff was told the SHU was full and so he requested placement in E Dorm. *See* Pl. Depo. 54:24-55:6-8. Plaintiff was therefore not involuntarily assigned to E Dorm over his objections; rather, he affirmatively selected that housing location himself undermining any claim that Defendant MacKay knowingly subjected Plaintiff to an objectively intolerable risk of harm. *See Garcia v. Westchester County*, No. 19-CV-2167, 2021 WL 706413, at *4 (S.D.N.Y. Feb. 22, 2021) (Courts found that because Plaintiff voluntarily conversed with the attacker prior to the assault and admitted during his deposition that

12

he did not fear the attacker, he cannot establish that, before the assault, he faced an objectively substantial risk of serious harm from which defendant could infer a credible threat).

Moreover, Defendant MacKay and Lt. Petrie took additional reasonable precautions before Plaintiff was transferred to E Dorm. Specifically, (1) Defendant MacKay conducted a Fight Investigation and (2) all the incarcerated individuals involved, including Plaintiff, were separated and Defendant MacKay recommended that one of the incarcerated individuals be transferred out of Cape Vincent. *See* MacKay Decl. ¶¶ 21, Exh. F; Petrie Decl. ¶ 21. Prior to placement in E Dorm, Lt. Petrie confirmed that Plaintiff did not have any known enemies housed there. *See* Petrie Decl. ¶ 16. Based on this evidence, Lt. Petrie, not Defendant MacKay, authorized Plaintiff's move to E Dorm. *See* MacKay Decl. ¶ 27, Exh. A; Petrie Decl. ¶ 22, Exh. F.

To the extent that Plaintiff attempts to establish that liability through a threat of generalized risk, his claims fail because Plaintiff cannot demonstrate that any further measures taken by Defendant MacKay would have prevented a further attack. Plaintiff's placement in E Dorm was not only requested by him, but fully vetted and approved by the watch commander. *See* Pl. Depo. 54:24-55:6-8; Petrie Decl. ¶ 16. Insofar as Plaintiff sought involuntary protective custody to avoid retaliation, *see* Petrie Decl. ¶¶ 16, 17, Plaintiff's request did not constitute the good cause necessary to place an individual in such status as there were no credible threats indicating he could not be placed in general population. *See* Petrie Decl. ¶¶ 20-21.

Based on the foregoing, Plaintiff cannot establish that Defendant MacKay was deliberately indifferent and his Eighth Amendment failure to protect claim must be dismissed. *See Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008) ("[T]here can be no liability absent a particularized threat to the inmate's safety, which was lacking here."); *see also Midalgo*, 2006 WL 2795332, at *10.

13

Even if, in hindsight, Defendant MacKay *should have been aware* of an impending incident between Plaintiff and other individuals in the E Dorm housing unit, "should have" is not enough to establish a constitutional violation as mere negligence is not enough for liability to attach. *See Shell*, 585 F. Supp. 2d at 470 ("Even if, in hindsight, it might have been wiser to have moved plaintiff to a different area sooner, that will not give rise to a constitutional claim.") (citing *Nolen v. Goord*, No. 02 CV 499, 2006 WL 448686, at *9 (W.D.N.Y. Feb. 17, 2006) ("Nolen does not point to any piece of evidence ... which would have put the defendants in this case on notice of an actual or specific threat of harm to him prior to the June 22, 1999 attack. Under these circumstances, the plaintiff's failure to protect claim cannot stand.").

Accordingly, based on the above, Plaintiff's Eighth Amendment failure to protect claim against Defendant MacKay must be dismissed.

## POINT III

### DEFENDANT MACKAY IS ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Ryan*, 709 F. Supp. 3d 82, 91-92 (N.D.N.Y. 2024) (citing *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017)). In other words, "[an] officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established right." *Id.* (citing *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008)).

A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There

14

is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory and constitutional question beyond debate." *Id.*

At the outset, Defendant MacKay is entitled to qualified immunity because he did not have the authority to authorize or direct where Plaintiff was housed or if Plaintiff was placed in protective custody. *See* Petrie Decl. ¶ 23; MacKay Decl. ¶ 27; *see also Kregler*, 821 F. Supp. 2d at 658; *Kuolkina*, 559 F. Supp. 2d at 317.

Further, there is no credible evidence that Defendant MacKay was aware of a particular threat to Plaintiff's life on October 28, 2020 or prior. It was objectively reasonable for Defendant MacKay to believe he was not violating Plaintiff's Eighth Amendment rights. *See Gssime*, 2009 WL 1161040, at *4; *Midalgo*, 2006 WL 2795332, at *10.

Defendant MacKay did not violate any of Plaintiff's constitutional rights and the second prong of the qualified immunity inquiry need not be reached. Even if the second prong is reached, Defendant MacKay is entitled to qualified immunity because his actions were objectively reasonable in light of the facts that were clearly established at the time the action[s] occurred. *See Staton*, 2023 WL 10354380, at *6.

Accordingly, Defendant MacKay is entitled to summary judgment dismissing Plaintiff's claims against him by operation of the qualified immunity doctrine.

15

**CONCLUSION**

Defendant's motion for summary judgment should be granted, and Plaintiff's Complaint should be dismissed with prejudice in its entirety.


Dated: Albany, New York
   May 22, 2026

             LETITIA JAMES
             New York State Attorney General
             Attorney for Defendant Lee M. Mackay
             The Capitol
             Albany, New York  12224


             By: _____
             Rachael Ouimet
             Assistant Attorney General, of Counsel
             Bar Roll No. 703304
             Telephone:  (518) 776-2599
             Fax:  (518) 915-7732 (Not for service of papers)
             Email: rachael.ouimet@ag.ny.gov

TO: Sara Wolkensdorfer, Esq.
   Rickner PLLC
   14 Wall St Ste 1603
   New York, NY  10005-2153