UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAMIEN CARRION,

|  |  |  |
|---|---|---|
| | *Plaintiff,* | 9:23-CV-1306 |
| -against- | | ECC/MJK |
| SERGEANT LEE M. MACKAY, et al., | | |
| | *Defendants.* | |

## STATEMENT PURSUANT TO LOCAL RULE 56.1(a)

Pursuant to Local Rule 56.1(a) for the United States District Court for the Northern District of New York, Defendants contend that no genuine issue exists as to the following material facts:

1.      Plaintiff Damien Carrion, at all times relevant, was an incarcerated individual in the care and custody of the New York State Department of Corrections and Community Supervision (DOCCS). *See generally* Complaint, Dkt. No. 1 (Compl.).

2.      On the evening of October 28, 2020, while on his regular day off, Defendant MacKay was called into the facility to assist staff in dealing with two separate incidents involving fights between incarcerated individuals. Declaration of Lee M. MacKay (MacKay Decl.) ¶ 13.

3.      Upon arrival at the facility, Defendant MacKay was made aware of the circumstances surrounding the two incidents—i.e., that there were two separate fights between incarcerated individuals. MacKay Decl. ¶ 13; *see* Declaration of Christopher Petrie (Petrie Decl.) ¶ 8.

4.      The first fight involved seven incarcerated individuals and occurred at approximately 5:31 p.m., on the northside walkway in front of A-1 Dorm. MacKay Decl. ¶ 14, Ex. C; Petrie Decl. ¶ 9, Ex. B.

1

5. The second fight occurred in the D-1 dorm and involved two incarcerated individuals. MacKay Decl. ¶ 14, Ex. C; Petrie Decl. ¶ 9, Ex. B.

6. It was later determined that these incidents were a result of a dispute over drugs between two rival gangs (Bloods and Latin Kings). MacKay Decl. ¶ 14, Ex. C; Petrie Decl. ¶ 9, Ex. B.

7. As a result of these incidents, all nine of the incarcerated individuals involved were placed in the SHU pending a disciplinary hearing. MacKay Decl. ¶ 15, Ex. C; Petrie Decl ¶ 10, Ex. B.

8. By 8:40 p.m. on October 28, 2020, all the SHU cells were filled and four of the nine incarcerated individuals still needed to be placed into SHU. MacKay Decl. ¶ 15, Ex. D; Petrie Decl. ¶ 9, Ex. C.

9. To accommodate the remaining four incarcerated individuals, Acting Captain O'Gorman approved the transfer of nine other incarcerated individuals, who were already housed in Cape Vincent's SHU to Gouverneur Correctional Facility. MacKay Decl. ¶ 15, Ex. E; Petrie Decl. ¶ 10, Ex. A.

10. Starting at 10:10 p.m. on October 28, 2020, the process of transferring incarcerated individuals out of Cape Vincent's SHU began and continued one at a time until 11:58 p.m. that same night. MacKay Decl. ¶ 15, Ex. D; Petrie Decl. ¶ 10, Ex. C.

11. Plaintiff was not involved in either the incident on the northside walkway or in D-1 Dorm. MacKay Decl. ¶ 16, Ex. C.

**October 28, 2020 incident involving Plaintiff in the G-1 Dorm**

12. On October 28, 2020, at approximately 9:45 p.m., Plaintiff was involved in a fight with two other incarcerated individuals in G-1 Dorm during which Defendant MacKay was not

present but was working elsewhere in the facility. MacKay Decl. ¶ 17, Ex. F; Petrie Decl. ¶ 11, Ex. D.

13. Non-party Officer Beadle reported to Defendant MacKay that two incarcerated individuals began throwing closed fist punches in front of the officer's station in the G-1 Dorm, and at some point, Plaintiff joined in the fight and began to throw closed fist blows. MacKay Decl. ¶ 18, Ex. F.

14. Non-party Officer Beadle gave all incarcerated individuals involved several direct orders to stop, these orders were ignored, and Officer Beadle used his Personal Alarm System (PAS) to initiate a red dot response. MacKay Decl. ¶ 18, Ex. F.

15. Defendant MacKay responded to the G-1 Dorm along with the response team and, upon arrival and approach, found that the incarcerated individuals, including Plaintiff, ceased fighting and complied with staff directives. MacKay Decl. ¶ 19, Ex. F.

16. According to common practice at Cape Vincent, Defendant MacKay, as the responding sergeant, conducted an investigation into the incident which included interviewing all the incarcerated individuals involved, including Plaintiff, to ascertain whether they needed to be moved out of G-1 dorm and/or enter into protective custody. MacKay Decl. ¶¶ 20-21, Ex. F; Petrie Decl. ¶ 12, Ex. D.

17. During Defendant MacKay's interview of Plaintiff, Defendant MacKay reviewed the protective custody waiver with Plaintiff who declined protective custody and signed a Protective Custody Waiver stating, "I don't want P.C. (D.C)." MacKay Decl. ¶ 22, Ex. G; Petrie Decl. ¶13, Ex. E.

18. Non-party Officer Beadle issued Plaintiff a Misbehavior Report (MBR), that Defendant MacKay endorsed, which indicated that non-party Lt. Petrie authorized Plaintiff to be

moved to E-2 Dorm, cube 18 and placed on confinement/restriction. MacKay Decl. ¶ 26, Ex. A; Petrie Decl. ¶¶ 14, 15, Ex. F.

19.     Lt. Petrie moved Plaintiff to E-2 Dorm because there were no vacant cells in the SHU due to the two incidents that happened that same day and did not place Plaintiff in protective custody because Plaintiff signed the waiver declining protective custody. MacKay Decl. ¶ 27, Ex. D; Petrie Decl. ¶¶ 15, 22, Ex. C.

20.     Defendant MacKay, as a Sergeant, does not have the authority to determine whether Plaintiff would be placed in involuntary protective custody or in which housing unit Plaintiff was placed. MacKay Decl. ¶¶ 23, 27; Petrie Decl. ¶¶ 23, 25.

21.     On October 28, 2020, at approximately 11:35 p.m., Defendant MacKay escorted Plaintiff to the E-2 Dorm, cube 18, and placed him on keeplock restriction. MacKay Decl. ¶ 28, Ex. H; Petrie Decl. ¶ 24, Ex. G.

22.     Keeplock restriction means that Plaintiff was not allowed to leave his cube unless he needed to use the bathroom. MacKay Decl. ¶ 28; Petrie Decl. ¶ 26.

### October 29, 2020 incident in the E-2 Dorm

23.     On October 29, 2020, at approximately 11:00 p.m. in the E-2 dorm, non-party Officer Latour used his PAS to call a red dot response upon observing Plaintiff and three other incarcerated individuals throwing closed fist punches to each other's head and face. MacKay Decl. ¶ 30, Ex. I.

24.     Defendant MacKay responded to E-2 dorm along with the response team and conducted another investigation. MacKay Decl. ¶ 31, Ex. I.

25.     During his investigation, Plaintiff told Defendant MacKay that approximately one minute prior to the fight, an unknown incarcerated individual threw a cup of boiling water on him,

4

which hit him in the face, chest, and left and right hand. MacKay Decl. ¶ 32, Ex. I.

26.    Plaintiff was examined by a nurse, who indicated that Plaintiff was burned on his chest, face, left wrist, and outside right thumb area. MacKay Decl. ¶ 33, Ex. I.

27.    Due to the nature of his injuries, Plaintiff was authorized to be moved to Hospital bed 4 by non-party Lieutenant Harrienger. MacKay Decl. ¶ 33.

28.    As a result of this incident, Plaintiff was issued another MBR charging him with (1) fighting (Rule 100.13); (2) Violent Conduct (Rule 104.11); and (3) Direct Order (Rule 106.10). MacKay Decl. ¶ 34, Ex. I.

29.    On October 30, 2020, Plaintiff was transferred to Upstate Correctional Facility and never returned to Cape Vincent. MacKay Decl. ¶ 35, Ex. J.

Dated: May 22, 2026
       Albany, New York

LETITIA JAMES
New York State Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


By: _____
Rachael Ouimet
Assistant Attorney General, of Counsel
Bar Roll No. 703304
Telephone: (518) 776-2599
Fax: (518) 915-7732 (Not for service of papers)
Email: rachael.ouimet@ag.ny.gov


TO:    Sara Wolkensdorfer, Esq.
       Rickner PLLC
       14 Wall St Ste 1603
       New York, NY  10005-2153
       *Via CM/ECF*

5